IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| DAVID MOORE and, | ) | CASE NO. 08-31536-H3-7 |
| LISA MOORE, | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | |
| LISA BUSHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 08-3162 |
| | ) | |
| DAVID MOORE and | ) | |
| LISA MOORE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OPINION

The court has held a trial of the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

David Moore and Lisa Moore ("Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 5, 2008. A discharge was entered on November 5, 2008.

During 1998, Debtors established a business breeding and selling dogs and horses.  David Moore specialized in the importing of rare dog breeds, primarily from Ireland,[1] and selling those rare dogs through sellers in the United States.  The instant adversary proceeding presents a commercial dispute between Debtors and Lisa Bushman, a seller of dogs in Tomball, Texas.

Initially, while Debtors lived in Minnesota, they conducted their business under the name "Kanes Lake Horse & Kennel."  Debtors presented invoices to Plaintiff on the letterhead of Kanes Lake Horse & Kennel, with the names of both Debtors printed below the letterhead.  The letterhead of Kanes Lake Horse & Kennel bears images of a dog and a horse.  (Plaintiff's Exhibit 19).  Debtors later moved to Texas.

During late 1998, Lisa Bushman ("Plaintiff") met Lisa Moore at a horse show in Germany.  Plaintiff testified that Lisa Moore first inquired of Plaintiff about horses, by a handwritten letter, and that later Debtors sought to enter into a business relationship with Plaintiff to sell dogs.  Plaintiff testified that she is in the business of breeding and selling rare breeds of dog, including Cavalier King Charles Spaniels ("Cavaliers").

---

[1] David Moore testified that he was born in Ireland.  He testified that he has been a United States citizen for ten years.  He testified that he has not relinquished his Irish citizenship.

Plaintiff testified that Debtors represented to her that the Cavaliers and West Highland White Terriers ("Westies") she would receive from Debtors would be registered in Ireland with the Irish Kennel Club, so that they could be registered in the United States with the American Kennel Club.  She testified that she also was to purchase a small number of Jack Russell terriers, which would be registered only with the Canine Club, and thus not available for registration with the American Kennel Club.  She testified that Debtors represented to her that the dogs would be purebred and healthy.

Plaintiff testified that she received several sick dogs from Debtors, and also had difficulty getting the Irish Kennel Club registration certificates from Debtors.  Plaintiff testified that she received harassing phone calls from customers who had purchased dogs from her, and was sued by her customers, because she was unable to deliver the registration certificates Debtors had agreed to provide.

Plaintiff testified that she incurred over $10,000 in veterinary expenses restoring the sick dogs to health before they were sold.  She testified that she was required to refund the funds paid by purchasers of several of the dogs.

Plaintiff testified that she made repeated requests for the registration papers for 108 Cavaliers, and 55 Westies.  She testified that Debtors continued to promise that they would

3

deliver the papers, but never did so.  She testified that she paid Debtors $132,000 for dogs for which she did not receive the certificates.

Plaintiff testified that she was given an application to certify one dog with the Irish Kennel Club.  She testified that, although the application bears what purports to be a signature of "Catherine Roche" as the dog's previous owner, the application was signed by David Moore.  The court finds Plaintiff's testimony to be credible.

On September 24, 2003, Plaintiff filed suit against Debtors, in the 155th Judicial District Court of Waller County, Texas, seeking damages based on Debtors' violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), common law fraud, and breach of contract.  (Plaintiff's Exhibit 11).  Plaintiff testified that the suit resulted in a trial lasting eight days.

In its "Final Judgment," the state court awarded Plaintiff $126,000 against David Moore for breach of contract damages, plus $125,000 for fraud damages, $97,373.74 in attorney fees, and postjudgment interest.  The state court awarded Plaintiff $125,000 for fraud damages against Lisa Moore, plus postjudgment interest.  The awards of "fraud damages" were based on the state court's determination that the jury found "clear and convincing evidence that the harm caused to Lisa Bushman Mallery

by David Moore and Lisa Moore resulted from fraud and malice." (Docket No. 7, at p. 8-11).

The jury question addressing fraud is Question No. 8. Question No. 8 asked the jury: "Do you find by clear and convincing evidence that the harm, if any, to Lisa Bushman Mallery resulted from malice and/or fraud." The jury answered yes.

David Moore has a different view of Debtors' business relationship with Plaintiff. He testified that Debtors had an arrangement with Plaintiff, in which Debtors were to have dogs shipped to Plaintiff directly from third-party breeders or brokers, and were not to provide registration paperwork unless Plaintiff paid a higher price. David Moore testified that Plaintiff represented to him that she was selling the dogs as pets, not subject to registration with the American Kennel Club. He testified that he was entitled to audit Plaintiff's records, in order to assure himself that Plaintiff was not breeding the dogs. The court finds David Moore's testimony as to the nature of the business relationship not credible. The court finds not plausible the notion that purchasers of rare expensive dogs would accept the purchase of these dogs without the ability to register them, and that accepting unregistered "purebreds" would be the norm, rather than the exception.[2]

---

[2]The court notes at Debtors' Exhibit 16 in this case, David Moore's deposition testimony in the state court proceeding. He

5

Both David Moore and Lisa Moore testified that they kept their businesses separate, with Lisa Moore involved in the breeding and sale of horses, and David Moore involved in the breeding and sale of dogs. The court finds this testimony not credible.[3]

During 2001, Lisa Moore took title to approximately 25 acres of real property in Magnolia, Waller County, Texas ("the 25 acre tract").[4] She claimed a homestead exemption for tax purposes beginning in 2001. David Moore testified that, during 2004, Debtors moved from Minnesota to Texas, and began living in a house on the 25 acre tract.

On August 24, 2005, after Plaintiff had filed suit in Waller County, Texas, but before the suit had gone to trial, Lisa Moore executed a conveyance of approximately 18 acres ("the 18 acre tract") out of the 25 acre tract to Davlis Enterprises, Ltd.

---

explained there that a license from the USDA was required in order to sell dogs through retailers. He testified that no license was needed if the dogs were sold to the public (p. 20-23). Thus, in the absence of documents given to the ultimate purchasers of the dogs from Plaintiff, Debtors could pretend that the dogs were transferred from Debtors directly to the purchasers, and thus could be transferred without a license from the USDA.

[3] The court notes, <u>inter</u> <u>alia</u>, that Debtors utilized a common letterhead bearing both a horse and a dog (Plaintiff's Exhibit 19), and that Lisa Moore sent e-mail to Plaintiff from an email address part of which is "lisahaspups" (Plaintiff's Exhibit 20).

[4] Lisa Moore testified in deposition that she was married to David Moore when the 25 acre tract was acquired. (Debtors' Exhibit 18).

6

("DEL")  Lisa Moore testified that DEL was a limited partnership, 98 or 99 percent of which is owned by Debtors.[5]  She testified that there is an office, a dog kennel, a horse-riding arena, and a small house, occupied by her sister, on the 18 acre tract.  The conveyance was recorded in the real property records of Waller County, Texas on April 21, 2006.  (Plaintiff's Exhibit 1).

Lisa Moore testified that she received nothing of value for her conveyance of the 18 acre tract to DEL.  However, the deed recites that the conveyance was "for the purpose of contributing to the capital of" DEL.  (Plaintiff's Exhibit 1).

The state court entered its judgment, based on the jury verdict, on December 7, 2006.  (Plaintiff's Exhibit 2). Plaintiffs filed an abstract of judgment in the real property records of Waller County, Texas, on January 23, 2007. (Plaintiff's Exhibit 3).

On October 11, 2007, the state court entered two orders for execution on its December 7, 2006 judgment.  The first of these orders (Plaintiff's Exhibit 4) provides, with respect to distributions from DEL or Davlis, LLC to David Moore or Lisa Moore, that any such distribution be paid directly to Plaintiff. The second of these orders (Plaintiff's Exhibit 5) directs that

---

[5] Lisa Moore testified in deposition that the remainder of the interest in DEL is owned by Davlis Enterprises, LLC, a limited liability company of which she and David Moore are the sole members.  The limited liability company is identified in the October 11, 2007 orders of the state court as "Davlis LLC"

7

Debtors turn over their interests in, inter alia, DEL and Davlis, LLC to the Waller County Sheriff on November 20, 2007.

In a postjudgment deposition taken by Plaintiff in the state court case, on December 5, 2007, Lisa Moore testified that some of the dogs on the 18 acre property were owned by DEL, and some were owned by David Moore.  She testified that, although she was the manager of DEL, she did not know how many dogs DEL owned.  Notwithstanding the state court's order to turn over to the sheriff their interests in DEL and Davlis, LLC, Lisa Moore testified that Debtors were still in possession of the property.  (Debtors' Exhibit 18).

Lisa Moore testified in her December 5, 2007, postjudgment deposition that she had discussed possibly filing bankruptcy.  (Debtors' Exhibit 18).

On February 20, 2008, Lisa Moore, purporting to act as president of Davlis, LLC, the general partner of DEL, executed a deed purporting to convey the 18 acre tract from DEL to herself, as separate property.  (Plaintiff's Exhibit 7).

The next day, on February 21, 2008, Debtors and Plaintiff entered into an agreement in the state court, under Rule 11 of the Texas Rules of Civil Procedure, under which Debtors agreed that they "will take no action to transfer" the "property owned by Davlis Enterprises Ltd. (approx. 18 acres)."

8

(Plaintiff's Exhibit 36). Lisa Moore testified that Debtors did not disclose, when the Rule 11 agreement was signed, that she had executed a conveyance of the 18 acre tract the previous day.

On February 22, 2008, one day after the Rule 11 agreement was signed, Debtors filed the February 20, 2008 deed in the real property records of Waller County, Texas. (Plaintiff's Exhibit 14).

In Debtors' schedules, filed with the petition on March 5, 2008, they listed the 25 acre tract (including the 18 acre tract) as an asset, with a value of $480,000, and encumbered by a secured claim in the amount of $337,000. (Docket No. 1, Case No. 08-31536-H3-7). Debtors claim the entirety of the 25 acre tract as exempt homestead. (Docket No. 16, Case No. 08-31536-H3-7).[6]

In the instant adversary proceeding, Plaintiff seeks a declaratory judgment determining that the 18 acre tract is property of DEL, determining that the 18 acre tract is nonexempt, and thus must be turned over to the Waller County Sheriff, a judgment excepting Debtors' debt to Plaintiff from discharge, and an award of attorney fees and costs.

With respect to attorney fees, Ronald Tonkin, attorney for Plaintiff, testified that $40,705.00, plus expenses, is a reasonable fee for prosecution of the instant adversary

---

[6]Debtors did not list an interest in DEL or Davlis Enterprises, LLC. Lisa Moore testified that Debtors' interests in DEL and Davlis Enterprises, LLC were delivered to the Waller County Sheriff.

proceeding.  The court finds Tonkin competent and his testimony credible.

## Conclusions of Law

Plaintiff, as the party seeking exception from discharge, objecting to discharge, and seeking declaratory judgment, bears the burden of proof, by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(dischargeability); Bankruptcy Rule 4003(c)(exemptions); In re Big V Holding Co., 267 B.R. 71 (Bankr. D.N.J. 2001)(declaratory judgment).

Under Section 523(a)(2)(A), a discharge does not discharge a debtor from a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.  11 U.S.C. § 523(a)(2)(A).

In order to prove nondischargeability under an actual fraud theory, the objecting creditor must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations.  RecoverEdge, L.P. v. Pentecost, 44 F.3d 1284 (5th Cir. 1995).

10

In the instant case, Plaintiff testified that Debtors made representations that the dogs would be purebred, healthy, and able to be registered.  With respect to the sick dogs, there is no evidence that Debtors knew the representations were false.  With respect to Plaintiff's ability to register the dogs, Lisa Bushman's uncontroverted testimony is that she couldn't register the dogs.  David Moore testified that he considered himself entitled to withhold information sufficient to register the dogs unless he was paid a higher price.  It is thus clear that he knew the dogs could not be registered without the papers he withheld.  The court concludes that Debtors knew the representations to Lisa Bushman were false, and made the representations with the intent to deceive.  Plaintiff testified that she paid $132,000 for dogs for which Debtors failed to provide information sufficient for registration with the American Kennel Club.  The state court judgment included $125,000 in damages to compensate Plaintiff for Debtors' fraud.  The evidence presented in this court supports a finding that the debt incurred by fraud is at least $125,000.  The court concludes that Debtors' debt to Plaintiff, in the amount of $125,000, is excepted from discharge under Section 523(a)(2)(A) of the Bankruptcy Code.

The status of ancillary obligations such as attorney's fees depends on that of the primary debt.  <u>Matter of Gober</u>, 100 F.3ed 1195 (5th Cir. 1996).  The attorney fees arose from

Debtors' fraud, and thus those debts are nondischargeable. The attorney fees were not segregated by claim before the state court. See In re Snook, 168 Fed. Appx. 577 (5th Cir. 2006). This court concludes that Debtors' debt to Plaintiff for attorney fees and costs awarded in the state court judgment, in the amount of $97,373.74, plus $3,166.05 in attorney fees and costs postjudgment and pre-bankruptcy,[7] and $41,275.15 in attorney fees and costs for the prosecution of the instant adversary proceeding,[8] for a total amount of attorney fees and costs of $141,814.94, are excepted from discharge under Section 523(a)(2)(A) of the Bankruptcy Code. The interest accruing under the state court judgment from the date of entry through the date of filing of the petition in the instant Chapter 13 case is $23,043.42, also is excepted from discharge under Section 523(a)(2)(A) of the Bankruptcy Code.[9]

With respect to the 18 acre tract, under Texas law, a family may exempt up to 200 acres of rural land from the bankruptcy estate if the property is used for the purpose of a

---

[7] This amount, which appears in Plaintiff's Exhibit 34, was stipulated by the parties.

[8] This amount represents $40,705.00 in fees and $570.16 in expenses, as set forth in Plaintiff's Exhibit 35.

[9] This represents the underlying amounts of $125,000 in fraud damages, plus $97,373.74 in attorney fees, for a total of $222,373.74, at the 8.25 percent rate of interest set forth in the state court judgment, for 1.2438 years, to the date of filing of the Chapter 7 petition.

12

rural home.  Tex. Prop. Code § 41.002(b); Tex. Const. art. XVI, § 51.

Homestead rights may be lost only through death, abandonment or alienation.  <u>In re Moody</u>, 862 F.2d 1194 (5th Cir. 1989).

In <u>In re Perry</u>, 345 F.3d 303 (5th Cir. 2003), the Fifth Circuit held that when a homestead is conveyed to a corporation, the stock of which is owned by the grantors, the property loses its homestead character regardless of whether the grantors continue to occupy the property.  <u>Perry</u>, 345 F.3d, at 311, <u>citing</u> <u>Nash v. Conatser</u>, 410 S.W.2d 512 (Tex. Civ. App. 1966).  The same rationale applies in the instant case, in which the 18 acre tract was transferred to a limited partnership wholly owned, directly or indirectly, by Debtors.  The court concludes that the 18 acre tract ceased to be a part of Debtors' homestead when it was conveyed to DEL.

However, the court's conclusion regarding the homestead character of the property after the conveyance to DEL does not end the inquiry.  The court must determine whether the purported transfer of property from DEL to Lisa Moore was valid.

Before Lisa Moore attempted to effectuate the transfer of the 18 acre tract from DEL to herself, the state court had entered an order directing that Debtors turn over their interests in DEL to the Waller County Sheriff, for levy.

A turnover order does not transfer title; it places an obligation on the judgment debtor to deliver the property to the sheriff.  It creates a burden of production, not a conveyance.  Ownership is transferred when the property is sold.  In re Andrews, 239 F.3d 708 (5th Cir. 2001).

Thus, on February 20, 2008, when DEL executed a conveyance purporting to transfer the 18 acre tract to Lisa Moore, DEL owned the property.  Debtors remained in control of DEL.[10]

An unrecorded conveyance of real property is void as to a creditor or a subsequent purchaser for value.  Tex. Prop. Code § 13.001(a).  Thus, on February 21, 2008, when Lisa Moore executed the Rule 11 agreement, the unrecorded conveyance executed the day before was not valid as to Plaintiff.

Under Rule 11 of the Texas Rules of Civil Procedure, a settlement agreement is enforceable if it is in writing, signed and filed with the papers as part of the record, or is made in open court and entered of record.  Breach of a Rule 11 agreement gives rise to an action for breach of contract. Padilla v. LaFrance, 907 S.W.2d 454 (Tex. 1995).

---

[10] Although there is no direct evidence as to actions of Debtors to comply with the turnover order, the court infers from the execution of the Rule 11 agreement on the day following the purported conveyance of the 18 acre tract, that no sale of Debtors' interest in DEL had taken place by February 20, 2008.

14

With respect to the Rule 11 agreement between Plaintiff and Debtors, the agreement was in writing, signed, and filed with the records of the state court.  It is enforceable as to Debtors.  Thus, on February 22, 2008, when Debtors caused the February 20, 2008 deed to be recorded, the act of recording the deed violated the Rule 11 agreement.

Texas courts recognize specific performance as a remedy for violation of a Rule 11 agreement.  See West Beach Marina, Ltd. v. Erdeljac, 94 S.W.3d 248 (Tex. App.--Austin 2002, no writ).  See also, Dodd v. Joy, 1999 WL 140163 (Tex. App.--San Antonio 1999, no writ).

In the instant case, Plaintiff is entitled to specific performance of the Rule 11 agreement signed and filed on February 21, 2008.  Thus, the recording of the February 20, 2008 deed on February 22, 2008 is void.  The court concludes that ownership of the 18 acre tract did not return to Debtors, in their individual capacity, and thus could not form the basis of a valid claim of homestead with respect to the 18 acre tract.

With respect to the request for a declaratory judgment and injunctive relief requiring that DEL turn over the 18 acre tract to the Waller County Sheriff, DEL is not before this court.  However, given that this court has determined that the 18 acre tract was not reconveyed to Debtors or the bankruptcy estate from DEL, Plaintiff may seek appropriate remedies from the state

court.

       Based on the foregoing, a separate conforming Judgment will be entered.

       Signed at Houston, Texas on March 27, 2009.

                                              _____
                                              LETITIA Z. PAUL
                                              UNITED STATES BANKRUPTCY JUDGE